## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JORGE DUCOS, Individually and on
behalf of all others similarly situated,

     Plaintiff,

                          Case No:

  v.                       COLLECTIVE ACTION

VERIZON CONNECT FLEET USA LLC,

     Defendants.

_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT

Plaintiff JORGE DUCOS, individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, sue Defendant, VERIZON CONNECT FLEET USA LLC,  (hereinafter referred to as "Verizon" or "Defendant") for violations of 29 U.S.C. 201 et seq. of the Fair Labor Standards Act (the "FLSA"), and states as follows:

## INTRODUCTION

1.    Defendant has over many years willfully FAILED to pay overtime wages to its Inside Sales Representatives (ISR) working under various job titles, some self-created, others created by the company such as:  Business Development Representative (BDR), Business Development Manager (BDM), Account Manager, Closer, Consultant, Fleet Manager, Development Manager, Associate Sales Partner

or Sales Partner (aka Closer), Specialist, Inside Sales Representative and other interchangeable or related job titles, all of which are now or were at one time, used to identify employees working as non-exempt, Inside Sales Representatives.

2.     In numerous lawsuits for unpaid overtime wages against the Defendant over the last three years, the position of Customer Success Manager (CSM), is yet another inside sales representative (ISR) position was not part of these prior lawsuits.

3.     Additionally, Verizon created the position of implementation specialist, another hourly paid, non-exempt customer service and sales support position which served as the liaison for all newly signed businesses for the Fleet GPS tracking services business during the first several months.  These implementation specialists also suffered to work off the clock without pay for all overtime hours worked.

4.     The primary duties of the hourly paid, non-exempt position of Customer Success Manager (CSM) are both customer service and inside sales, similar to the other ISR in the prior lawsuits.

5.     All members of the putative class were classified as non-exempt status with a base compensation plan of some stated annualized base pay, plus an annual bonus plan based upon performance of the company and some individual metrics.

6.     Historically, Defendant purchased Fleetmatics USA, LLC for $2.4 billion dollars in 2016 to commence or gain access to the telematics industry and sell

GPS tracking software and products focused on fleet management, mobile workforce solutions and the IoT (Internet of Things).

7.    After the purchase, Verizon Connect continued to operate the Fleetmatics company and its assets without change and continued to operate the company until on or about April 1, 2018, when the name was officially changed to Verizon Connect and employees were then paid directly by Verizon.

8.    Defendant operated its business from 5 offices:  1) San Diego, California;  2) Rolling Meadows, Illinois; 3) Charlotte, North Carolina; 4) Tampa, Florida; 5) Scottsdale, Arizona (since Closed) sometime in 2019 or 2020, from where it employed similarly situated ISR, all working on similar compensation plans, performing similar if not identical job responsibilities, and all suffering from the same common, unlawful pay practices pursuant to a de facto policy and scheme to avoid overtime wages and save millions of dollars in labor costs.

9.    Upon information and belief, Defendant has since employed other CSM and implementation specialists working remotely in other geographic regions or from other offices.

10.    It is not a mere coincidence that Verizon Connect has subjected yet another group or class of employees to similar unlawful pay practices that started with the company when it was known as Fleetmatics USA, LLC., and which resulted

in a settlement on November 3, 2016, in the case of *Gillard, Stramiello and Pate v. Fleetmatics USA LLC,* Case no. 8:16-cv-00081, DE 70, in the sum of $2,102,250.00.

11.    Similarly, in *LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY, Individually, and on behalf of all others similarly situated, v. VERIZON CONNECT FLEET USA LLC*, Case No: 8:20-cv-01474, (MDFL) Verizon Connect settled the unpaid overtime wage claims for approximately 185 present and former inside sales employees working as Business Development Representatives (BDR) and Sales Partners (closers) in 2022 (DE 143) for the Gross Settlement Amount of $3,200,000.00.

12.    Then in 2023, Verizon Connect yet again was forced to resolve claims for unpaid overtime wages by insides sales representatives in California, for ISR working from the San Diego office and remotely in the case of 21-1257 - Santillan v. Verizon Connect Inc. et al, Case no 21-1257, which Verizon Connect settled for $1,600,000.00 involving approximately 500 ISR.

13.    Defendant has been involved with a scheme to avoid paying overtime wages to all its ISR nationally, and thus save and steal millions of dollars of wages owed to 1000's or more employees. This scheme involves both discouraging CSM's and implementation specialists not to report overtime hours under the company self-reporting time keeping system, but also not providing these employees any real means or opportunity to claim the time they worked during an automatically

deducted 1 hour meal break, which would equate to overtime hours worked during the workweek.

14.    Ironically, Defendant even WARNS the public of the risks of not properly tracking the work hours of non-exempt employees in their own literature and marketing materials easily found on the web: https://www.verizonconnect.com/resources/article/software-improves-time-card-reporting/ "**Accurate, Efficient, Simplified Timecard Reporting**".

15.    Plaintiff herein commences this legal action against Defendant for willful violations of the federal wage and hour overtime pay laws and related regulations on behalf of all similarly situated current and former employees of Defendant who worked anytime in the preceding three (3) years to the present.

16.    Pursuant to a common policy and plan, Plaintiffs and the classes of similarly situated current and former employees who worked under company assigned or self-created job title of Customer Success Manager, and implementation specialists or variations on the same titles suffered to work off the clock without pay for all hours worked.

17.    This CSM position is primarily an inside sales representatives (ISR) position, tied with customer services, in which the employees are engaged in selling products and services on a non-retail basis to other businesses and commercial

enterprises (aka "b2b"), including the renewal of their sales contracts or upselling of products and services.

18.     Plaintiff, and the class of similarly situated employees, were unlawfully not compensated a premium for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendant to evade the overtime wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiff and all other CSM.

19.      Indeed, just examining the complaints in *Gillard, et. al. v. Fleetmatics USA LLC*, and *Garnick v. Verizon Connect Fleet USA LLC*, and the California Rule 23 CLASS ACTION case of *Santillan v. Verizon Connect Inc. (settled in 2023 for $1,600,000.00 for all inside sales reps)* Verizon knew that the CSM were permitted to suffer to work off the clock as well.

20.     Defendant has refused since all of these lawsuits back to 2015 and all the settlements to actually institute a time clock system and program to accurately track the work hours of these hourly paid employees. Verizon knew or should have known that CSM and implementation specialists were working off the clock and working without taking the full 1 hour meal break automatically deducted from work hours and pay.

21.     From the litigation history of prior inside sales representatives claims, Verizon's investigations and observable ESI, Verizon knew that employees working

as CSM and implementation specialists also routinely worked off the clock, and without taking 1 full hour meal breaks. Thus, CSM and implementation specialists worked off-the-clock resulting in unpaid overtime hours in order to meet required key performance metrics and sales goals in order to keep their jobs.

22.    Managers and supervisors are believed to have witnessed the extra hours, but also encouraged CSM and implementation specialists to work as many hours as possible to hit the assigned quotas and meet goals and performance metrics called (KPI meaning key performance indicators) under threats of termination of employment.

23.    Defendant never stopped or prevented or prohibited employees from working after the shift times ended, or from logging on and working prior to the shift times.

24.    Instead, Defendant also turned a "blind eye" to all of the off the clock work for numerous reasons including reduced labor costs and increased profits, while pressuring and encouraging CSM to work as many hours as necessary to hit their quotas, metrics and production goals.

25.    Defendant created and maintained a De Facto off the clock policy under which employees were discouraged and warned against self-reporting more than 40 hours on their weekly time sheets and time records, but also pressured to hit metrics and sales goals or suffer disciplinary action, PIPs and termination of employment.

26.     From review of phone logs, emails, computer logins and all the history of prior ISR working off the clock, Defendant knew or should have known that CSM and implementation specialists were also not taking full 1 hour meal breaks and working off the clock hours beyond the 9 hour corporate-set shift times.

27.     From its own observations and assessments by managers and history and communications with employees, Defendant knew or should have known that CSM and implementation specialists had to routinely work more than 40 hours each week in order to keep up with job responsibilities; that included not taking the full 1 hour of uninterrupted meal breaks but neither claiming such time on the time sheets.

28.     Defendant received a financial benefit, increased revenues and free labor from all the off the clock work performed by Plaintiff and the CSM and implementation specialists.

29.     Defendant has willfully failed to pay Plaintiff and all similarly situated persons in accordance with the Fair Labor Standards Act (FLSA). Specifically, Plaintiff and similarly situated employees were not paid premiums for all hours they worked in excess of forty (40) hours per week.

30.     Plaintiff Ducos and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA. Thus, the Defendant's unlawful pay practices complained of herein are not only unlawful in violation of the FLSA and state laws, such as the Illinois

Minimum Wage Act, but were willfully maintained after years of complaints and notifications of employees working off the clock and taking less than 1 hour meal breaks.

31.    In this pleading, "Defendant" means the named Defendant and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

32.    The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

<b><u>JURISDICTION AND VENUE</u></b>

33.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

34.    This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

35.    This Court has general jurisdiction over Defendant for the claims of all those similarly situated from across the U.S. and for non-resident opt in Plaintiffs because the Defendants corporate offices are here within this district.

36.    Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the damages occurred within this district.

## THE PARTIES

37.    Plaintiff Jorge Ducos is a citizen of Florida.  He worked for Defendant as a Customer Success Manager (CSM), a hybrid inside sales representative and customer service position, from July 2017 until December 1, 2023. Prior to Covid, Ducos worked at Defendant's office in Tampa, FL. On or about March 2020, Plaintiff worked remotely from his home but still reported to the Tampa, FL office. At some point in time in 2022 and after the prior closure of the office, Plaintiff, like other CSM, returned to work 1 day a week in the Tampa office, and the other 4 days remotely from his home.

38.    Plaintiff's primary job duty as a CSM was to contact assigned customers "accounts" and get them to buy more products and services and renew their contracts for Fleet GPS tracking hardware and software services.

39.    Plaintiff and all CSM were assigned production quotas for sales revenues, despite the fact that when it actually came to negotiating and consummating any sales, CSM were required to hand-off the account/customer to another employee such as a sales partner for that role.

40.    All CSM were given pre-populated weekly time sheets which reflected 8 hours per day and 40 hours per week, despite a 9 hour day of 8 am to 5 pm, which unless altered, would automatedly deduct 1 hour from each day for a meal break.

41.    Early on in his employment term with Defendant, Ducos attempted to report overtime hours worked, but which resulted in backlash from his superior for reporting the same.

42.    Plaintiff was told then that the company has an unwritten, De Facto rule that overtime hours should not be reported. But Plaintiff was encouraged to work as many hours as necessary off the clock to hit sales goals or quotas, and metrics to maintain his employment.

43.    Plaintiff's manager told him that any overtime hours needed to be off the record and on his own time.

44.    At that time, Plaintiff was working in the office, and he and other CSM were clearly staying after 5pm, coming in early and not taking 1 full hour of uninterrupted, non-working meal breaks that Verizon's managers saw and knew about.

45.    Throughout most of Plaintiff's employment term, there was no discussions or meetings on the FLSA, and nothing about bona fide meal break laws and regulations.

46.    At all times material, Plaintiff was an employee of Defendant during the term of his employment as contemplated by 29 U.S.C. § 203.

47.    Defendant classified Plaintiff and all others similarly situated as non-exempt, employees who were subject to the FLSA, including entitlement to overtime premiums for all hours worked more than 40 in each and every workweek.

48.    Plaintiff was paid a base hourly rate of pay stated in some annualized sum, and which was even stated as a base salary leading to confusion by CSM.

49.    In addition, all CSM were provided a bonus structure based upon percentage to goal performance, such that if they met 100% of the goal or quota set by management there was a maximum sum in bonus money they could earn, and less in bonus money using a pro rata percentage of the sales goals met.

## DEFENDANT, VERIZON CONNECT FLEET USA LLC

50.    Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter "Defendant" and/or "Verizon Connect"), is a Foreign Limited Liability Corporation, a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., is a publicly traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 5055 North Point Parkway, Alpharetta, GA 30022.

51.    Defendant may be served through its Registered Agent for service of process, CT Corporation System, 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324.

52.    As stated by Defendant on its website, Verizon Connect is a company which offers: "Guiding a connected world on the go by automating, optimizing and revolutionizing the way people, vehicles and things move through the world".

53.    Defendant has now, or had in the past, 11 offices in the US, including: Rolling Meadows, Il, Atlanta, Austin, Charlotte, Waltham, Boston, Irvine, San Diego, Scottsdale, AZ, Tampa and Temple Terrace, FL along with one (1) office in Toronto.  Upon information and belief, Defendant also now or in the past 3 years, employed similarly situated CSM in other geographic locations working remotely.

54.    Defendant is an employer within the definition of the FLSA, has revenues exceeding $500,000 annually in all applicable time periods, and is involved in interstate commerce.

55.    Defendant provides fleet operators (companies or businesses with numerous vehicles) with an internet based system that enhances workforce productivity through real time vehicle tracking, route optimization, job dispatch, and fuel usage monitoring.

56.    Competitors who also employ similar ISR such as Fleetcor and NEXTRAQ, have been caught numerous times stealing wages, and violating the FLSA for inside sales representatives through numerous unlawful pay practices, and when factoring in the *Gillard et al. v. Fleetmatics* and *Garnick et al. v. VERIZON CONNECT FLEET USA LLC* case settlement for ISR, it is unlikely that Defendant

Verizon has not already had more than enough reasons to have been made aware of the unlawful pay practices complained of herein and continued to act with reckless disregard for the FLSA, if not willfully continuing to violate the FLSA.

57.     Thus, Defendant had a duty to have investigated, studied, audited, and assessed its pay practices and its federal and state law duties and obligations and determine if it was in compliance; and the willful failure to have done so subjects it to payment of liquidated damages, a three (3) year statute of limitations for FLSA violations.

## FACTUAL AND COLLECTIVE ACTION ALLEGATIONS

58.     This collective action arises from a longstanding and continuing wrongful scheme by Defendant to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

59.     Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following FLSA CLASS members:

**THE FLSA CLASS:**

> **All employees working as Customer Success Managers and Implementation Specialists, or any other tiles or variations of these**

**titles used to describe the same position who are now currently employed or were previously employed anywhere in the U.S. by Verizon Connect Fleet USA LLC, or its related entity, Verizon Connect Inc. within the past three years preceding the filing of this lawsuit to the present.**

60.    Plaintiff is able to protect and represent the Collective or putative Class, is willing, able, and consents to doing so.

61.    Plaintiff has routinely worked more than forty (40) hours in workweeks throughout the term of their employment with Defendant and without being paid a premium for all these overtime hours.

62.    Plaintiff worked at and reported to Defendant's Tampa/Temple Terrace, FL office where Defendant required CSM to work Monday through Friday, nine (9) hours per day, forty-five (45) hours per work week at a minimum in a set schedule of 8 am until 5 pm., and later after the Covid pandemic shutdown, working remotely from their homes.

63.    Each day, the company has a standardized one (1) hour lunch break, where all CSM and implementation specialists are expected and required to use this set one (1) hour time for a meal break or just for break time, without deviation.

64.    Thus for each nine (9) hour work day scheduled and assigned by Defendant, the company automatically deducts one (1) hour of pay for each day for this break and informs CSM and implementation specialists to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours,

regardless of whether Plaintiff or similarly situated employees took 5 minutes of uninterrupted meal break, 10 minutes, or no uninterrupted break at all.

65.    There is no real mechanism or policy in place for CSM to report and claim the time CSM perform work during the 1 hour meal break time, but they are all permitted to access systems, emails, phones during so-called meal breaks.

66.    Defendant does not use a time clock that CSM clock in and out their exact work times and break times. Despite clearly readily available software and programs that can easily record their actual work times and minimize claims and provide a real means by which an CSM can be paid for all their actual work hours.

67.    Plaintiff alleges for himself, and on behalf of the putative class who elect to opt-in to this action, that they are entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay as required by the FLSA, including for all meal break times in which they performed work and which they did not have or take bona fide meal breaks, started work before the shift times or performed work after the ending shift time or outside the regular business hours.

68.    Defendant employs, upon information and belief and investigation, an estimated 200 or more CSM and implementation specialists working from numerous offices or working remotely and reporting to these offices including: Atlanta, Georgia; Alpharetta, Georgia; Boston, Massachusetts; Temple Terrace, Florida;

Rolling Meadows, Illinois; Charlotte, North Carolina; San Diego, California; Irvine, California.

69.    Upon information and belief, Defendants may also now have, or had within the relevant three (3) year class period, employed other Inside Sales Representatives working from their homes or other offices in other states, such as New York or Michigan, and have employed upwards of 500 or more during the preceding three (3) years.

70.    Upon information and belief, the CSMs and implementation specialists in all offices or remotely working under variations in this job title, are all paid under a common pay or compensation plan of a base pay hourly pay and a percentage to goal bonus structure.

71.    All CSM regardless of the office hired or working from, also performed their job duties in a uniform, similar manner; and all are supervised and managed according to the same national standards and uniform policies and procedures set by the Defendant and applicable to all offices.

72.    All CSM were treated and classified by Defendants as nonexempt employees, and whose primary duty is making sales or developing business leads for others to sell.

73.    CSM were purposefully misled by Defendant to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work schedule for a

mandatory meal break deduction without regard or concern as to whether the employees ever took the full one hour break or worked through the allotted one (1) hour meal breaks.

74.    Said differently, Defendant failed to provide any mechanism and real opportunity for Plaintiff and all other CSM to claim the times they worked through the one (1) hour meal breaks or to log in and out for breaks.

75.    The actual work hours of all the CSM were never recorded by the Defendant despite the availability of simple time clock and time tracking programs, software and hardware designed to accurately clock the actual work times and break times for hourly paid employees.

76.    The company time reporting system as well is pre-populated with a total of eight (8) hours for each day and forty (40) hours for each workweek, and no boxes or lines to put in break times started or ended, nor any place to log in the actual times they started working each day or ceased working at the end of the day.

77.    Moreover, all CSM were routinely advised subsequent to their acceptance of the offer to work for the Defendant, that the failure to mee the sales goals or quotas and other key performance metrics would result in their termination of employment.

78.    Defendant knew that those employees who excelled and met sales goals and quotas had to work more than 40 hours in order to do so.  Defendant knew that

CSM were on phone calls and sending out emails for which the time was not recorded or tracked, and daily and weekly approved these inaccurate time sheets and time records.

79.    The Defendant maintained a companywide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked for CSM despite clear knowledge CSM have worked and continue to work overtime hours beyond their minimum shifts and with less than 1 full hour meal breaks which were unreported and off the clock.

80.    Defendant knew this as well from examining the claims and complaints of ISR in all the related lawsuits, and even from the fact that other ISR working as BDR and Sales Partners were working more than 40 hours routinely to meet sales goals and hit KPI.

81.    As per the company pay stubs and electronically submitted timesheets, it's generally and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period, the same should have signaled that as to these hourly paid, non-exempt sales employees that their time sheets were inaccurate, unreliable and underreported.

82.    Upon information and belief, all CSM are supervised by Directors and other managers, who very closely monitor performance, including by and through

dashboards, and who scrutinize their performance metrics, such as phone calls and sales production. Defendant has micro-managed all Inside Sales Representatives.

83.    All CSM make a certain number of daily phone calls, emails and 'touches' and have sales goals or quotas for customer retention rates and upsells, which if not met, subject them to disciplinary action, including termination of employment.

84.    Defendant also created and maintained a De Facto policy that CSM should not report more than 40 hours, or overtime hours, on the time sheets unless pre-authorized, but all CSM should work as many overtime hours as needed or required, off the clock and "on their own dime," to meet quotas, Key Performance Indicators (KPI) aka "metrics" and sales goals and thus keep their jobs.

85.    The overtime wage provisions set forth in FLSA §207 apply to Defendant, as it engages in interstate commerce.  Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203.

86.     The actual job duties performed by the employees working in the position of CMS does not satisfy the elements of any exemptions within FLSA §213, and involved non-exempt job duties such as customer service and inside sales.

87.    Plaintiff, as well as the members of the putative class of similarly situated persons routinely worked through part or all of their lunch breaks, worked

prior to or after the set and standardized nine (9) hour daily shift times, and also performed other work incidental to their job duties by working at home or outside the office making or receiving client phone calls, sending or receiving and reading emails without being paid for all these additional work hours.

88.    Plaintiff routinely engaged in making or receiving telephone calls, reading or sending emails after business hours as to which Defendant did not provide any guidance or opportunity to submit or claim these additional work hours.

89.    Many sales calls had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

90.    Plaintiff routinely commenced working prior some minutes prior to his stated 8:00 am work shift, and more routinely continued beyond the ending shift time of 5:00 pm, both of which he was not precluded from doing by Defendant of this additional access and work time.

91.    Plaintiff, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

92.    Pursuant to FLSA §207, Defendant was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

93.     Defendant is fully aware that CSM employees performed work and took less than 1 full hour of meal breaks, and routinely logged in and commenced work prior to the stated shift start times, and continued to work after the stated ending shift time.

94.     Management encouraged employees to do whatever it took to hit sales goals and quotas and meet KPI or metrics, but do so without reporting these hours and discouraged the reporting of all overtime hours.

95.     Defendant was also fully aware that the nature of the position required and involved CSM making and receiving telephone calls and sending and receiving emails beyond the stated shift times, especially when dealing with customers on the Mountain time zones.

96.     Defendant also required a mandatory number of phone calls or dials, along with other sales goals which created the pressure to put in extra hours off the clock by CSM to keep their jobs and avoid being disciplined for lack of performance.

97.      Upon information and belief, all of the top performing CSM routinely worked overtime and extra hours and there is a known direct correlation between the number of hours worked and the production and productivity of the sales employees.

98.     Defendant however maintained a De Facto policy against ISR reporting overtime hours, and against complaining about not being paid for all overtime hours

worked each day and each week under fear and threat of scrutiny being brought upon them for incurring overtime hours.

99.    The Company maintained a code of silence when it came to the issue of overtime hours and overtime wages, with literally no meetings or discussions about the time tracking requirements of the FLSA, or how to submit and claim overtime hours worked both inside and outside the office, including the 1 hour meal breaks.

100.    Defendant maintained a culture and environment of discouraging CSM from submitting or reporting overtime hours worked because if they were not the top producers or meeting all quotas and goals, they would be subjected to a high level of scrutiny and face the ire of management.

101.    Defendant did not throughout the relevant three (3) year class period, properly clock, track or record the actual working hours of each CSM in all of their offices and knew that the time sheets and time records were inaccurate, underreported and not reliable.

102.    Upon information and belief, All persons employed by Defendant as CSM and implementation specialists in the US working at or reporting to the various Verizon offices worked a similar schedule of five (5) days per week, 9 hour days with 1 hour auto-deductions each day for meal breaks regardless of whether the some, or any part was taken by the employee.

103.   In order to meet sales retention quotas and maximize performance metrics, Plaintiff and other CSM would routinely work extra hours beyond their stated minimum 40 hours of work time and took less than the 1 full hour non-working, uninterrupted meal break.

104.   Even when managers knew CSM worked after their ending shift times or logged in and worked prior to the shift starting times, thus incurring overtime hours which were not clocked or reported, managers ratified and approved time sheets showing exactly just 8 hours of work for the day and even 40 hours for  the week, knowing the time records were inaccurate and under-reported.

105.   CSM were warned when falling short of quotas and not hitting KPI or metrics that their employment would be terminated and so management encouraged them to work as many additional hours as necessary to hit goals and quotas.

106.   All CSM and implementation specialists followed corporate policies and procedures applicable to all their offices where CSM and implementation specialists worked.

107.   All CSM implementation specialists were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices.

108.   CSM attended sales meetings during which the Defendant went over new procedures, policies and sales protocols and was clear to Plaintiff, applied to all CSM and implementation specialists employed by the Defendant.

109.   Defendant was aware or should have reasonably been aware that CSM and implementation specialists were working off the clock, working more hours than reported or underreporting hours, including coming in early, working during allotted meal breaks and staying late.

110.   Moreover, Defendant was keenly aware from the prior FLSA cases it settled that it had a history of permitting employees to suffer to work off the clock, and that its time keeping policies and time keeping records which included using a prepopulated and self reporting time keeping practice and procedure was inaccurate.

111.   As a result of the prior FLSA overtime lawsuits, including but not limited to the *Garnick v. Verizon Connect* action, Defendant knew or should have known that CSM were also working during meal breaks, beyond the prepopulated 40 hour time sheets, and that their time records were inaccurate and in instances falsified and fraudulently completed by management.

112.   Defendant made a calculated business and financial decision not to inquire with CSM and implementation specialists whether they too had worked off the clock.

## COUNT I
## VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION

## PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

113.   Plaintiff alleges and incorporates by reference the foregoing paragraphs of this Complaint and fully restates and realleges all facts and claims herein as if fully stated.

114.   Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to pay all CSM and implementation specialists required overtime wages for all hours worked over 40 in each and every workweek.

115.   Plaintiff, and all other CSM and implementation specialists routinely worked through some or all of the one (1) hour meal break provided, and as such all time should have been counted as compensable overtime hours during any workweek that Plaintiff and all others similarly situated worked the rest of the forty (40) hour shift times.

116.   Defendant knew that Plaintiff and other CSM and implementation specialists routinely worked through some or all of this 1 hour provided lunch break, and knew that working while eating was not an uninterrupted, excluded work time.

117.   Employees were not given any real opportunity to report and claim these compensable meal break hours, or the times spent on telephone calls and emails outside the office, and the company time reporting system did not provide for

any contemporaneous time tracking in which breaks were logged in and out or the actual start or ending times for the day were actually logged.

118.   When CSM and implementation specialists were making phone calls or logged in and doing work as last as an hour or more after their ending shift times, Defendant turned a "blind eye" to this off the clock work, and ratified time sheets which did not reflect such hours and otherwise said just 8 for the day and 8,8,8,8,8 for the week for a total of 40 hours exactly.

119.   Similarly, all CSM and implementation specialists, including Plaintiff, were permitted to commence working prior to the shift times, but likewise, there was no time clock to remember the exact hour and minutes when they started for the day and when looking at the weekly time sheet at the end of the week.

120.   Defendant did not enforce its own time keeping policies.

121.   Plaintiff and other CSM and implementation specialists also routinely worked after the ending shift time and were discouraged by management from claiming and reporting these overtime hours.

122.   The CSM and implementation specialist positions, because of the nature of the business being B2B, involved having to communicate with customers after business hours by telephone and email.

123.   If Plaintiff received a phone call or email during a time when he was taking a break, he would accept the call or respond to the email, thus interrupting the

one hour meal break time and even taking the break time below the bona fide requirements under the DOL and FLSA.

124.   CSM and implementation specialists used personal cell phones which had their company email on their phones. Plaintiff and similarly situated employees were expected to respond to customers when they contacted them outside of work schedules and while taking breaks.

125.   Defendant also failed to provide any real means to report these additional times and work hours, and should have been counted as compensable time.

126.   Defendant had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including CSM.

127.   As Defendant failed to institute any actual time tracking system or time clock for employees to log in and out their ACTUAL work times, the system left Plaintiffs, and all other CSM and implementation specialists subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

128.   Defendant's conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of Plaintiffs and

all other CSM and implementation specialists actual working hours, resulted in a willful violation of the overtime wage law of Section 207 of the FLSA.

129.   Defendant's actions constitute permitting Plaintiff and all other CSM and implementation specialists to suffer to work off the clock without being paid for all hours, as literally there was no actual time clock.

130.   Defendant maintained a code of silence as to discussing overtime hours, overtime pay and any problems of employees knowingly exceeding the forty (40) hour workweek by coming in early, working through meal breaks and staying late while their time sheets reflect only forty (40) hours for the week and eight (8) hours for the day.

131.   At any given time, managers and supervisors were aware of Plaintiff and other CSM and implementation specialists coming in and working early, working through meal breaks and staying late and that their time sheets were inaccurate and not capturing all their work hours.

132.   The Defendant created a work environment and culture that was oppressive and involved pressure and discouragement against reporting overtime hours and complaining about not being paid for all overtime hours, as doing so would draw the ire and scrutiny of management.

133.   Meanwhile, Plaintiff and other CSM were warned to hit metrics and sales goals or they would find themselves on the way out the door.

134.   Employees worked in fear of reporting the overtime hours worked, out of fears and concerns that if they were not meeting the quotas, metrics and goals, they would be subjected to review, scrutiny and potential termination.

135.   Thus, Plaintiff and other CSM suffered to work off the clock without complaints, despite management knowing that the top producers and performers did so, and in order to be a top producer and performer, the job required working more than 40 hours routinely.

136.   Defendant has willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiff and the Putative Class, comprised of all current and former similarly situated CSM   and implementation specialists premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

137.   Defendant does not have a good faith basis for these described unlawful pay practices, such that Plaintiff and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one and one half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

138.   Defendant knowingly and willfully failed to track the hours worked by Plaintiff and the class of similarly situated employees.

139.   Defendant suggested and encouraged that CSM and implementation specialists should work as many hours as they could to meet or exceed sales goals, and has direct knowledge of them working overtime hours which were not reported or claimed.

140.   By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiff and the class of similarly situated CSM and implementation specialists, Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

141.   Defendant knew or should have known that the act of permitting employees to work off the clock and without a clock, including working through meal breaks, coming in early, staying late was grossly insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

142.    Defendant knew or should have known that its time keeping practices of prepopulating 8 hours per day and 40 hours per week, and auto deducting 1 hour of breaks without the real means to report and claim times worked during these meal breaks was a grossly insufficient practice, discourages accurate reporting of

overtime hours, and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

143.    To summarize, Defendant has willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiff, and the class of similarly situated persons:  a) Willfully instituting and maintaining a deficient, inaccurate time tracking system to the harm and detriment of all other CSM and implementation specialists; b) maintaining a De Facto policy against reporting overtime hours worked, including working during meal breaks; and c) permitting Plaintiff and all other CSM and implementation specialists to suffer to work off the clock without being paid for all hours worked.

144.    As a result of the prior FLSA Section 216b collective action lawsuit by *Gillard, Stramiello and Pate v. Fleetmatics*, settled in November 2016, and the *Garnick V. Verizon Connect Fleet USA LLC* action, settled in 2022, Defendant was keenly aware of its history of violating the FLSA and stealing wages from non-exempt employees, including Plaintiff and all other similarly situated CSM, yet, continued to maintain unlawful procedures, policies, including a De Facto policy against reporting all overtime hours worked as to which deprive Plaintiff and all other CSM their overtime wages earned.

145.    As a result of Defendants' willful violations of the FLSA, Plaintiff and all other present and formerly employed CSM and implementation specialists

similarly situated have suffered economic damages by Defendant's failure to pay overtime compensation in accordance with FLSA §207.

146.    Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

147.    As a result of Defendant's unlawful acts and pay practices described herein, Plaintiff other similarly situated CSM and implementation specialists have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

**WHEREFORE,** Plaintiffs JORGE DUCOS, individually, and on behalf of all other similarly situated past and present Customer Success Managers (CSM) and Implementation Specialists (IS) seek the following relief:

> a.    Designate Plaintiff Jorge Ducos as Representatives of the FLSA Collective Class and award him a service fee or award for bringing this action on behalf of all others similarly situated.
>
> b.    That the Court find and declare Defendant has willfully violated the overtime compensation provisions of the FLSA;

c.  That the Court find and declare Defendant's violations of the FLSA overtime laws were and are willful and lacking a good faith basis for complying with the state and federal overtime laws;

d.  That the Court enjoin Defendant, under 29 U.S.C. § 217, from withholding future payments of overtime compensation owed to members of the FLSA Class;

e.  That the Court award to Plaintiff and the FLSA Class, comprised of all similarly situated employees, overtime compensation at the lawful and applicable overtime and premium rates of pay, including the value of all compensation earned for bonuses/commission, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

f.  That the Court award Plaintiff and the plaintiffs who opt into this action, recovery of their reasonable attorneys' fees, costs and expenses of litigation pursuant to FLSA § 216;

g.  That the Court find and declare that Defendant has willfully, and with a lack of good faith, violated the overtime provisions of the FLSA, including the time tracking requirements for non-exempt employees;

h.  That the Court apply a three (3) year statute of limitations to the FLSA claims;

i.  That the Court award any other legal and equitable relief as this Court may deem fair, just or appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted January 23, 2024.

*/s/Mitchell L. Feldman*
**Mitchell L. Feldman, Esq**
Florida Bar No.: 080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave #101
Tampa, FL 33626
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Lead Attorney for Plaintiff and the class of similarly situated*

*/s/ Benjamin Lee Williams*

Benjamin Lee Williams, Esq.
Florida Bar No. 0030657
**WILLIAMS LAW P.A.**
464 Sturdivant Ave
Atlantic Beach, FL 32233
E-Mail: bwilliams@williamslawjax.com
Tel: 904-580-6060
Fax: 904-417-7494

## <u>LEAD COUNSEL DESIGNATION</u>

Pursuant to Local Rule 2.02(a) Attorney Mitchell Feldman, Esq. Is herein

designated as lead counsel for Plaintiff and all other future opt in Plaintiffs.